UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-20073 |
| Plaintiff, | Hon. Bernard A. Friedman |
| v. | **Offenses:**<br>18 U.S.C. § 371<br>18 U.S.C. § 1343 |
| D-5  FRANCIS LOUIS VOGEL, III, | **Maximum Penalty:**<br>5 Years<br>20 Years |
| Defendant. | **Maximum Fine:**<br>$250,000 |
| | **Maximum Supervised Release**:<br>3 Years |

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant

FRANCIS LOUIS VOGEL, III (D-5) and the government agree as follows.

1.   **GUILTY PLEA**

     **A.   Counts of Conviction**

     The defendant will enter a plea of guilty to Counts One and Seven of the

Indictment, which charge conspiracy to commit wire fraud in violation of 18

U.S.C. § 371 and wire fraud in violation of 18 U.S.C. § 1343, respectively.

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-20073 |
| Plaintiff, | Hon. Bernard A. Friedman |
| v. | **Offenses:** |
| D-1  FRANCIS LOUIS VOGEL, III, | 18 U.S.C. § 371<br>18 U.S.C. § 1343 |
| Defendant. | **Maximum Penalty:**<br>5 Years<br>20 Years |
| | **Maximum Fine:**<br>$250,000 |
| | **Maximum Supervised Release**:<br>3 Years |

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant

FRANCIS LOUIS VOGEL, III (D-1) and the government agree as follows.

1. **GUILTY PLEA**

    A.    **Counts of Conviction**

    The defendant will enter a plea of guilty to Counts One and Seven of the

Indictment, which charge conspiracy to commit wire fraud in violation of 18

U.S.C. § 371 and wire fraud in violation of 18 U.S.C. § 1343, respectively.

1

**B.**   <u>Elements of Offense</u>

The elements of Count One, conspiracy to commit wire fraud (18 U.S.C. § 371) are as follows.

1.      Two or more persons conspired, or agreed, to commit the crime of wire fraud (18 U.S.C. §1343) in violation of 18 U.S.C. § 371;

2.      The defendant knowingly and voluntarily joined the conspiracy; and

3.      A member of the conspiracy did one of the overt acts described in the Indictment for the purpose of advancing or helping the conspiracy.

The elements of Count Seven, wire fraud (18 U.S.C. § 1343) are as follows.

1.      The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises (or willfully participated in such a scheme with knowledge of its fraudulent nature).

2.      The defendant acted with the intent to defraud.

3.      That in advancing, furthering, or carrying out the scheme, the defendant transmitted or caused the transmission of any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce.

## C.   <u>Factual Basis for Guilty Plea</u>

The following facts are a sufficient and accurate basis for defendant's guilty plea.

Beginning in approximately January of 2006 and continuing to approximately August of 2008, defendant Frank Vogel III (Vogel) did knowingly and willfully participate with others, including Andrew Bogandoff and Shayne Fowler, in a scheme to defraud and obtain money from commercial business people, located throughout the United States, by means of materially false and fraudulent pretenses, and in doing so, defendant transmitted or caused to be transmitted wire communication in interstate commerce.

Defendant Vogel worked through his Michigan corporation, Arlington Richfield, Inc. (ARI), which had an office located in Birmingham, Michigan in the Eastern District of Michigan, Southern Division.  ARI was advertised by Vogel as a firm with the ability to assist businesses in securing commercial loans or capital funding.

Defendant Vogel, through ARI, would refer business people to Remington Financial Group, Inc. (Remington), a Pennsylvania Corporation, which operated across the United States.  Remington advertised itself as a firm that provided capital

3

and financial services for business owners nationwide and that they had the ability to deliver debt and equity capital.

Defendant Vogel referred commercial business owners and developers who were seeking commercial loans to Remington in the hope of securing loans or capital funding from secondary market lenders based on Remington's representations that they had the ability to secure such funding. Vogel knew or should have known that Remington did not have the ability to secure funding as was represented, but continued to refer to them business owners looking for loans.

Vogel's customers entered into a contract, known as a Letter of Interest (LOI), with Remington, which was often printed with ARI letterhead paper. This LOI required the customers to remit a non-refundable up front "due diligence" fee. After that fee was sent, Remington would send a portion of this fee to Vogel as a brokerage referral fee. The due diligence fees were typically sent by the customers via interstate bank wires to a Remington bank account. The brokerage referrals fees were then sent from a Remington bank account to ARI's bank account via interstate bank wires. A review of ARI's bank account for the period between

4

January of 2006 and August of 2008 reveals approximately 70 wires from Remington to ARI totaling over $1,111,000.

**2.   SENTENCING GUIDELINES**

### A.   Standard of Proof

The Court will find sentencing factors by a preponderance of the evidence, following receipt of this Rule 11 Plea Agreement, the Presentence Report, and any other information that the Court may require of the parties.

### B.   Guideline Range

There are two sentencing guideline disputes.  The government calculates the defendant's guideline range as 51 to 63 months, as set forth in the attached worksheets.  The parties disagree as to the amount of loss to be considered under USSG § 2B1.1(b)(1) and the number of victims to be considered under USSG § 2B1.1(b)(2).  The Court will make this factual determination at the time of sentencing.  Besides these two issues, there are no sentencing guidelines disputes.  Except as provided below, the government's recommended guidelines range is 51 to 63 months, and the defendant reserves the right to argue for a lower range based on the amount of loss and number of victims.

Except as necessary to the Court's determination regarding paragraph 2.B.1, neither party may take a position concerning the applicable guidelines that is different from any position of that party as noted above, and as reflected in the attached worksheets.

### 1. Findings That Increase The Government's Recommended Guidelines Range

If the Court finds that (i) the defendant's criminal history category is higher than reflected on the attached worksheets, or (ii) the offense level should be higher because, after pleading guilty, the defendant made any false statement to or withheld information from his probation officer, otherwise demonstrated a lack of acceptance of responsibility for his offense, or obstructed justice or committed any crime, and if any such finding results in a guidelines range higher than 51 to 63 months with respect to either Count One or Count Seven, the higher guidelines range becomes the government's recommended guidelines range in Paragraph 2.B.

### 2. Findings That Do Not Increase The Government's Recommended Guidelines Range

If the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the

6

attached worksheets, this paragraph does not authorize a corresponding increase in the government's recommended guidelines range.

**3.   ·SENTENCE**

The Court will impose a sentence pursuant to 18 U.S.C. §3553, and in doing so must consider the sentencing guidelines range.

**A.   Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that any sentence of imprisonment in this case may not exceed the top of the sentencing guidelines range as determined in Paragraph 2.B. and in any case may not exceed 60 months.

**B.   Supervised Release**

A term of supervised release follows the term of imprisonment.  The Court may impose a term of supervised release on Counts One and Seven of no more than three (3) years.  The agreement concerning imprisonment described above in Paragraph 3.A does not apply to any term of imprisonment which results from any later revocation of supervised release.

**C.   Special Assessment**

The defendant will pay a special assessment of **$200**.

7

**D.**   **Fine**

There is no agreement as to fines.

**E.**   **Restitution**

   **Part 1: Remington Victims**

The term "Remington Victims" refers to the victims of the case which originated in the Eastern District of Pennsylvania and was transferred to the Eastern District of Michigan, which is the subject of this Plea Agreement. Defendant agrees to pay restitution to every identifiable victim of the defendant's offenses, including relevant conduct stemming from the advance fee scheme subject to the charges outlined in the Indictment. Defendant reserves the right to object to the number of victims and amount of restitution as submitted by the government in regards to the "Remington Victims." The Court will hold a hearing if necessary and will ultimately determine the amount of restitution to be ordered as a part of defendant's sentence and judgment order.

   **Part 2: Michigan Victims**

The term "Michigan Victims" refers to the victims of case 11-cr-20647 which was indicted in the Eastern District of Michigan charging the defendant with another fraudulent scheme.

In addition to the restitution in Part 1, the defendant agrees to pay restitution in the amount of **$604,475** to the "Michigan Victims" as listed in Exhibit A attached to this Agreement and incorporated by reference. Of this amount, defendant reserves the right to object to paying restitution in the amount of $25,000 to Century Home Builders and $20,000 to RMR Pacific, LLC. The Court will hold a hearing if necessary to determine whether these amounts should be included in the restitution order to the "Michigan Victims."

**4.   OTHER CHARGES**

At the time of sentencing in this case, and immediately following the Court's sentence, the government shall move to dismiss all charges contained in case no. 11-cr-20647 against defendant Frank Vogel III.

**5.   FORFEITURE OF PROPERTY**

As part of this agreement, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, defendant agrees to forfeit to the United States, without contest, his interest, if any, in any property, real or personal, which constitutes or is derived from proceeds traceable to his violations of 18 U.S.C. §§ 371 and 1343, as alleged in Counts One and Seven of the Indictment, including the following:

(a)   Nineteen Thousand One Hundred Nine Dollars ($19,109.00) in United States Currency, seized on July 14, 2011, at the residence of defendant

Francis Louis Vogel, Jr., at 29974 Harper Ave., St. Claire Shores, MI, further identified as Asset # 11-FBI-005276, and

(b)     Thirty Four Thousand Two Hundred Twenty Five Dollars ($34,225.00) in United States Currency seized on or about June 28, 2011, from Comerica Bank Account Number 1852104312, held in the name of Arlington Richfield Inc., further identified as Asset # 11-FBI-004775,

(collectively referred to hereinafter as the "Subject Property").  Defendant agrees that the Subject Property is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 as proceeds of the offenses alleged in Counts One and Seven of the Indictment.  Defendant agrees that there is a sufficient nexus between the Subject Property and the offenses to which defendant is pleading guilty.

Pursuant to 21 U.S.C. § 853(p), if, by any act or omission of the defendant, the Subject Property:  cannot be located upon the exercise of due diligence;  has been transferred, sold to or deposited with a third party;  has been placed beyond the jurisdiction of the court;  has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, defendant agrees to the forfeiture of any of his other real or personal property, up to the value of such unavailable assets.

10

In entering into the foregoing agreement with respect to forfeiture, defendant expressly waives his right to have a jury determine the forfeitability of his interest in the Subject Property as provided by Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.  With respect to the Subject Property, defendant agrees to the entry of one or more orders of forfeiture upon application by the United States at, or any time before, his sentencing in this case.  Defendant further agrees to hold the United States, its agents and employees, harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this Plea Agreement.

In entering into this agreement with respect to forfeiture, defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and/or the Due Process Clause.

Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and

11

waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

**6.** **WITHDRAWAL OF GUILTY PLEA OR VACATION OF CONVICTION**

    **A.** **Each Party's Right To Withdraw From This Agreement**

The government may withdraw from this agreement at any time prior to this Court's acceptance of the defendant's guilty plea.

The defendant may withdraw from this agreement, and may withdraw his guilty plea if the Court decides to impose a sentence higher than the maximum allowed by Paragraph 3. This is the only reason for which the defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under these circumstances, the Court may impose a sentence greater than the maximum allowed by Paragraph 3.

    **B.** **Consequences of Withdrawal of Guilty Plea or Vacation of Conviction**

If defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement, including the charges in case no. 11-cr-20647. If additional charges are filed against the defendant within six months after the date the order vacating

12

defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, the defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

7.   **WAIVER OF APPEAL**

Defendant waives any right he may have to appeal his conviction.  In addition, the defendant waives any right he may have to appeal his sentence and restitution order if the sentence of imprisonment imposed does not exceed the higher of 60 months or, if the Court makes a finding of the type specified in Paragraph 2.B.1, the top of the guidelines range as determined by the Court.

If the sentence imposed is within the guideline range recommended by the government in Paragraph 2B, the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.

8.    **PARTIES TO PLEA AGREEMENT**

Unless otherwise indicated, this agreement does not bind any government

agency except the United States Attorney's Office for the Eastern District of

Michigan.

9.    **SCOPE OF PLEA AGREEMENT**

This agreement, which includes all documents that it explicitly incorporates,

is the complete agreement between the parties.  This agreement supersedes all

other promises, representations, understandings and agreements between the

parties concerning the subject matter of this plea agreement that were made at any

time before the guilty plea is entered in court. Thus, no oral or written promises

made by the government to the defendant or to the attorney for the defendant at

any time before defendant pleads guilty are binding except to the extent they have

been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if the defendant has entered into a

proffer agreement in writing or a cooperation agreement in writing with the

government, this plea agreement does not supersede or abrogate the terms of any

such prior written agreement.

14

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

**10.   ACCEPTANCE OF AGREEMENT BY DEFENDANT**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by **5:00 P.M. on 5/7/2014**. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.


BARBARA L. MCQUADE
United States Attorney


_____            _____
CYNTHIA OBERG                                              ABED HAMMOUD
CHIEF, WHITE COLLAR CRIME UNIT            ASSISTANT UNITED STATES ATTORNEY
ASSISTANT UNITED STATES ATTORNEY


DATE: MAY 6, 2014


BY SIGNING BELOW, DEFENDANT ACKNOWLEDGES THAT HE HAS READ (OR BEEN READ) THIS ENTIRE DOCUMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS. HE ALSO ACKNOWLEDGES THAT HE IS SATISFIED WITH HIS ATTORNEY'S ADVICE AND REPRESENTATION. DEFENDANT AGREES THAT HE HAS HAD A FULL AND COMPLETE OPPORTUNITY TO CONFER WITH HIS LAWYER, AND HAS HAD ALL OF HIS QUESTIONS ANSWERED BY HIS LAWYER.


_____            _____
PENNY BEARDSLEE                                      FRANCIS LOUIS VOGEL, III
ATTORNEY FOR DEFENDANT                     DEFENDANT


DATE: 5/7/14

16

# WORKSHEET A   (Offense Levels)

Defendant:   Frank Louis Vogel, III                Count(s):   1 and 7

Docket No:   14-20073                                      Statute(s):   18 U.S.C. §§1343 and 371

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of con-viction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1.   BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS  (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2B1.1(a)(1) | Wire Fraud | 7 |
| 2B1.1(b)(1)(I) | Loss: More than $1,000,000 and less than $2,500,000 | 16 |
| 2B1.1(b)(2)(B) | Over 50 victims | 4 |
| | | |
| | | |
| | | |
| | | |

## 2.   ADJUSTMENTS  (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| | | |
| | | |
| | | |

## 3.   ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2.  If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**********************

27

☒ *If this is the only Worksheet A, check this box and skip Worksheet B.*

☒ *If the defendant has no criminal history, check this box and skip Worksheet C.*

(rev. 06/99)

# WORKSHEET C   (Criminal History)

Date of defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses):

## 1.   PRIOR SENTENCES

### Prior Sentence of Imprisonment Exceeding 13 Months  (U.S.S.G. §§ 4A1.1(a)):        3 POINTS

Enter 3 points for each prior adult sentence of imprisonment exceeding one year and one month that either (1) was imposed within 15 years of the defendant's commencement of the instant offenses (taking into account relevant conduct and stipulated offenses) or (2) resulted in the defendant's confinement during any part of that 15-year period.  (See U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1), (e)(1).)

### Prior Sentence of Imprisonment of at Least 60 Days  (U.S.S.G. §§ 4A1.1(b)):        2 POINTS

Enter 2 points for each prior sentence of imprisonment of at least 60 days not counted under U.S.S.G. § 4A1.1(a) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and resulted in the defendant's confinement during any part of the 5-year period preceding the defendant's commencement of the instant offense (see U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2)(A)).

### Other Prior Sentences  (U.S.S.G. §§ 4A1.1(c)):        1 POINT

Enter 1 point for each prior sentence not counted under U.S.S.G. § 4A1.1(a) or (b) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and was imposed within 5 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)(B)).  NOTE:  No more than 4 points may be added under this item.

| Date of Imposition | Status* | Offense | Sentence | Release Date** | Points |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

\*   If the defendant committed the offense before turning 18, indicate whether he or she was sentenced as a juvenile (J) or as an adult (A).

\*\*   A release date is required in only three situations:  (1) when a sentence covered under U.S.S.G. § 4A1.1(a) was imposed more than 15 years before the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) but resulted in his or her confinement during any part of that 15-year period; (2) when a sentence counted under U.S.S.G. § 4A1.1(b) was imposed for an offense committed before the defendant turned 18 but resulted in his or her confinement during any part of the 5-year period preceding his or her commencement of the instant offense (taking into account relevant conduct and stipulated offenses); and (3) when 2 criminal history points are added pursuant to U.S.S.G. § 4A1.1(e) because the defendant committed the instant offense (taking into account relevant conduct and stipulated offenses) shortly after or during imprisonment resulting from a sentence counted under U.S.S.G. § 4A1.1(a) or (b) or while he or she was on escape status for such a sentence.
(rev. 06/99)

(WORKSHEET C, p. 2)

**2.   COMMISSION OF INSTANT OFFENSE WHILE UNDER PRIOR SENTENCE (U.S.S.G. § 4A1.1(d))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) while under any criminal justice sentence having a custodial or supervisory component, including probation, parole, supervised release, imprisonment, work release, and escape status. (*See* U.S.S.G. §§ 4A1.1(d), 4A1.2(m), (n).) List the type of control and identify the sentence from which it resulted.

**3.   COMMISSION OF INSTANT OFFENSE SHORTLY AFTER OR DURING IMPRISONMENT (U.S.S.G. § 4A1.1(e))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) either less than 2 years after release from imprisonment on a sentence counted under U.S.S.G. §§ 4A1.1(a) or 4A1.1(b) or while in imprisonment or escape status on such a sentence. However enter, only 1 point for this item if 2 points were added under Item 2. (*See* U.S.S.G. §§ 4A1.1(e), 4A1.2(n).) List the date of release and identify the sentence from which it resulted.

**4.   PRIOR SENTENCE RESULTING FROM CRIME OF VIOLENCE (U.S.S.G. § 4A1.1(f))**

Enter 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because such sentence was considered related to another sentence resulting from a conviction for a crime of violence. But enter no points where the sentences are considered related because the offenses occurred on the same occasion. (*See* U.S.S.G. §§ 4A1.1(f), 4A1.2(p).) Identify the crimes of violence and briefly explain why the cases are considered related. NOTE: No more than 3 points may be added under this item.

**5.   TOTAL CRIMINAL HISTORY POINTS**

Enter the sum of the criminal history points entered in Items 1-4.

> 0

**6.   CRIMINAL HISTORY CATEGORY**

| Total Criminal History Points | Criminal History Category |
|---|---|
| 0 – 1 | I |
| 2 – 3 | II |
| 4 – 6 | III |
| 7 – 9 | IV |
| 10 – 12 | V |
| ≥ 13 | VI |

> I

(rev. 06/99)

# WORKSHEET D   (Guideline Range)

**1.**   **(COMBINED) ADJUSTED OFFENSE LEVEL**

| 27 |

Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level entered in Item 8 of Worksheet B.

**2.**   **ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY  (U.S.S.G § 3E1.1)**

| -3 |

**3.**   **TOTAL OFFENSE LEVEL**

| 24 |

Enter the difference between Items 1 and 2.

**4.**   **CRIMINAL HISTORY CATEGORY**

| I |

Enter "I" if the defendant has no criminal history.  Otherwise, enter the criminal history category entered in Item 6 of Worksheet C.

**5.**   **CAREER OFFENDER / CRIMINAL LIVELIHOOD / ARMED CAREER CRIMINAL (U.S.S.G. ch. 4, pt. B)**

   a.   Total Offense Level:  If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision (U.S.S.G. § 4B1.3), or the armed career criminal provision (U.S.S.G. § 4B1.4) results in a total offense level higher than the total offense level entered in Item 3, enter the higher offense level total.

   b.   Criminal History Category:  If the career offender provision (U.S.S.G. § 4B1.1) or the armed career criminal provision (U.S.S.G. § 4B1.4) results in a criminal history category higher than the criminal history category entered in Item 4, enter the higher criminal history category.

**6.**   **GUIDELINE RANGE FROM SENTENCING TABLE  (U.S.S.G. ch. 5, pt. A)**

| 51-63 |

Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total offense level entered in Item 3 or 5.a and the criminal history category entered in Item 4 or 5.b.

**7.**   **STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE**

If the maximum sentence authorized by statute is below, or a minimum sentence required by statute is above, the guideline range entered in Item 6, enter either the guideline range as restricted by statute or the sentence required by statute. (*See* U.S.S.G. § 5G1.1.)  If the sentence on any count of conviction is required by statute to be consecutive to the sentence on any other count of conviction, explain why.

_____

_____

(rev. 06/99)

# WORKSHEET E   (Authorized Guideline Sentences)

**1.** **PROBATION (U.S.S.G. ch. 5, pt. B)**

      a.  <u>Imposition of a Term of Probation</u>  (U.S.S.G. § 5B1.1)

☒  1.  Probation is not authorized by the guidelines (minimum of guideline range > 6 months or statute of conviction is a Class A or a Class B felony).  If this box is checked, go to Item 2 (Split Sentence).

☐  2.  Probation is authorized by the guidelines (minimum of guideline range = zero months).

☐  3.  Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 6 months).

      b.  <u>Length of Term of Probation</u>  (U.S.S.G. § 5B1.2)

☐  1.  At least 1 year but not more than 5 years (total offense level ≥ 6).

☐  2.  No more than 3 years (total offense level < 6).

      c.  <u>Conditions of Probation</u>  (U.S.S.G. § 5B1.3)

         The court must impose certain conditions of probation and may impose other conditions of probation.

**2.** **SPLIT SENTENCE (U.S.S.G. § 5C1.1(c)(2), (d)(2))**

☒  a.  A split sentence is not authorized (minimum of guideline range = 0 months or > 10 months).

☐  b.  A split sentence is authorized (minimum of guideline range > 0 months but ≤ 10 months).  The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 8, 9, or 10 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, or 6 months).  The authorized length of the term of supervised release is set forth below in Item 4.b

**3.** **IMPRISONMENT (U.S.S.G. ch. 5, pt. C)**

    A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D).  (*See* U.S.S.G. § 5C1.1.)

(rev. 06/99)

**(WORKSHEET E, p. 2)**

**4.    SUPERVISED RELEASE  (U.S.S.G. ch 5., pt. D)**

      a.  <u>Imposition of a Term of Supervised Release</u>  (U.S.S.G. § 5D1.1)

        The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute.  The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

      b.  <u>Length of Term of Supervised Release</u>  (U.S.S.G. § 5D1.2)

☐  1.  At least 3 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

☒  2.  At least 2 years but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

☐  3.  1 year, where the count of conviction is a Class E felony or a Class A misdemeanor,  i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

☐  4.  The statute of conviction requires a minimum term of supervised release of _____ months.

      c.  <u>Conditions of Supervised Release</u>  (U.S.S.G. § 5D1.3)

        The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

**5.    RESTITUTION (U.S.S.G. § 5E1.1)**

☐  1.  The court will determine whether restitution should be ordered and in what amount.

☒  2.  Full restitution to the victim(s) of the offense(s) of conviction is *required* by statute.  (*See, e.g.*, 18 U.S.C. §§ 3663A, 2327.)  The parties agree that full restitution is $___**TBD**_____.

☐  3.  The parties agree that the court may order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including $_____.  (*See* 18 U.S.C. §§ 3663(a)(3).)

☐  4.  The parties agree that the court may *also* order restitution to persons other than the victim(s) of the offense(s) of conviction.  (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3).)

☐  5.  Restitution is not applicable.

(rev. 06/99)

**(WORKSHEET E, p. 3)**

## 6.   FINE (U.S.S.G. § 5E1.2)

### a. Fines for Individual Defendants

The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).)  Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table. (*See* U.S.S.G. § 5E1.2(b).)  However, there are exceptions to this general rule. (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

### b. Fine Range from Fine Table (U.S.S.G. § 5E1.2(c)(3))

| **Minimum Fine** | **Maximum Fine** |
|:---:|:---:|
| $10,000 | $100,000 |

## 7.   SPECIAL ASSESSMENT(S) (U.S.S.G. § 5E1.3)

The court must impose a special assessment on every count of conviction.  The special assessments for individual defendants are

$100.00 for every count charging a felony ($50.00 if the offense was completed before April 24, 1996)
$ 25.00 for every count charging a Class A misdemeanor,
$ 10.00 for every count charging a Class B misdemeanor, and
$  5.00 for every count charging a Class C misdemeanor or an infraction.

The defendant must pay a special assessment or special assessments in the total amount of $   $100.00  .

## 8.   ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES

List any additional applicable guideline, policy statement, or statute.

_____

## 9.   UPWARD OR DOWNWARD DEPARTURE (U.S.S.G. ch. 5, pts. H & K)

List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range. _____

_____

_____

(rev. 06/99)

US v. Vogel                 Exhibit A: List of Victim Companies for Restitution Purposes (Michigan Case)                                As of 5/6/2014

| No. | Project Name | Company | City, State | Principals | Wire Date | Wire Amount | Check Date | Check Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | 29 SFR Bridge Loan | City Space | Philadelphia, PA | Ala Rabady | 5/24/2011 | $1,500 | | |
| 2 | AAA Self Storage Depot | AAA Self Storage | South Plainfield, NJ | Larry & Donna Clark | 6/15/2010 | $8,500 | | |
| 3 | B & D Dental | B & D Dental | Salt Lake City, UT | Benjamin Jung and Steve Campbell | 8/9/2010 | $5,000 | | |
| 4 | Bartone Plaza | Bartone Properties | Farmingdale, NY | Anthony Bartone | 9/10/2010 | $15,000 | | |
| 5 | Belton City Mini Storage | Spectrum Service Inc. | Lenwood, KS | William Textor | 1/19/2010 | $7,500 | | |
| 6 | Blue Lagoon | LHF Development, LLC | Aurora, CO | Lionel Foster | 11/1/2010 | $4,500 | | |
| 7 | Briarcliff Marriott Kansas City | BC Fund 1 | Kansas City, MO | Dan Carr | | Check | 9/12/2008 | $25,000 |
| 8 | CHAJP | CHAJP, Inc. | Pennsauken, NJ | Christine Harper & Phil Mckeaney | 6/24/2011 | $5,000 | | |
| 9 | Chattooga Walk | MPE Enterprises | Westlake, OH | Marty Eynon | 8/16/2010 | $12,500 | | |
| 10 | CMK Investments | CMK Investments | Battleground, WA | Michael & Kelly Achen | 5/29/2009 | $15,000 | | |
| 11 | Comanche Condominiums | Unique Homes of Texas | Betram, TX | Ryan Haberer | 1/29/2009 | $15,000 | | |
| 12 | Daytona Inn | | Daytona Beach, FL. | Waldemar Ruchinski | 4/11/2011 | $3,500 | | |
| 13 | Devington Community Development | Devington Community Development | Indianapolis, IN | Sharon Arnold | 6/9/2011 | $7,500 | | |
| 14 | Dogwood Lakes | Riverside Bldg Supply | Mount Airy, NC | Richard Vaughn | 10/16/2009 | $15,000 | | |
| 15 | Durocher | | Fenton, MI | Gerald Duroucher, Sr. | 3/17/2009 | $7,500 | | |
| 16 | Evergreen Development | | Stephens, AR | Jay Pittman | 9/29/2010 | $7,500 | | |
| 17 | Excel Acquisition | New Phase Communication | Ashland, MO | Marty Schell | 6/9/2009 | $25,000 | | |
| 18 | Fairmont Park Senior Center | The Expo Group, Inc. | Boca Raton, FL | Andrei Berger | 6/3/2011 | $15,000 | | |
| 19 | Fuji Plaza | | Concord, NC | Xiao Ling Yu and Chao Rong Pu | 5/12/2010 | $10,000 | | |
| 20 | Good Knight Inn | Roy Property Management | Northridge, CA | Rob Sarthou | 12/22/2009 | $2,000 | | |
| 21 | Greenspot Village and Market Place | Greenspot Village and Market Place | Redlands, CA | Glenn Eissman | 12/3/2008 | $25,000 | | |
| 22 | Hilton Garden Inn | Helm Builders | Apex, NC | Scott McAllister | 5/12/2010 | $7,500 | | |
| 23 | Holiday Inn | Removal Corp | Peakskill, NY | George Liaskos | 9/10/2010 | $15,000 | | |
| 24 | Jabez Properties | | Gig Harbor, WA | John R. Gray | 9/3/2008 | $10,000 | | |
| 25 | Keystone Garden Estate | | Larksville, PA | Jennifer Menichini | 3/2/2011 | $7,500 | | |
| 26 | KGN Investments | | Parker, CO | Keith & Gary Nylund | 12/17/2010 | $5,000 | | |
| 27 | Kuakini Villas Condominium | BLM Properties & CBM Mukilteo | Lynnwood, WA | Clifford Moon | 7/13/2010 | $8,500 | | |
| 28 | Mahogany | Mahogany | Mays Landing, NJ | George M. and George B. Aaron | 12/13/2010 | $15,000 | | |
| 29 | MVP Lanes | MVP Lanes, LLC | Baltimore, MD | Marc Rosen | 6/8/2010 | $25,000 | | |
| 30 | Pine Meadows Homes | | Coeur d'Alene, Idaho | David Rousher | 10/28/2008 | $25,000 | | |
| 31 | Puerto Penasco | Clancy International | Phoenix, AZ | Joan Clancy | 3/30/2009 | $25,000 | | |
| 32 | Ragged Mountain Pacific | RMR Pacific LLC | Salt Lake, UT | Doug Strong and Dave Anderson | 10/18/2010 | $20,000 | | |
| 33 | New Jersey Health Care Center | Rio Vista Companies | Oradell, NJ | John Mavroudis | 11/12/2009 | $15,000 | | |
| 34 | San Luis Rio Colorado Power Plant | North Branch Holding | Miami, FL | Joseph Bojnowski and Jorge Barona | 7/27/2010 | $40,000 | | |
| 35 | Serino's Italian Food | Serino's Italian Food Mfg | Hyde Park, MA | Paul Serino | 2/16/2010 | $10,000 | | |
| 36 | Tract Y Islands of Droal | Century Home Builders | Doral, FL | Cesar Llano | | Check | 12/18/2008 | $25,000 |
| 37 | Cottages at Canyon View | Black Pearl LLC | Midvale, UT | Michael Spencer & T. Naylor (Wade) | 10/14/2008 | $25,000 | | |
| 38 | Waretech | Catellus Group | Charlotte, NC | Stephen and Derek Barker | 3/2/2011 | $15,000 | | |
| 39 | Wasioto Hotel and Resort | | Wilkesboro, NC | Maurice Elledge | 10/15/2010 | $5,000 | | |
| 40 | Wirrina Cove | Wirrina Development Corporation | Bella Vista, Australia | Adam Fahim | 11/27/2009 | $17,475 | | |
| 41 | World Imported Motorcars | World Imported Motorcars | Neptune, NJ | Keith Lawson | | Check | 3/16/2009 | $12,500 |
| 42 | Ventura Place | Jayeff Construction Corp | Manasquan, NJ | Jack Zoeller & Dennis Tynes | 3/4/2009 | $18,500 | | |
| 43 | Shell Pointe Residences | | | George Heaton | 9/4/2008 | $25,000 | | |
| | | | | | | $541,975 | | $62,500 |

**Restitution Total**                                                                                                    $604,475